MILTON L. MORAN, as next friend for DANIEL W. MORAN, a minor, and individually, Plaintiff, v. DELAWARE RACING ASSOCIATION, a Delaware Corporation, Defendant.

(*March* 24, 1966)

CHRISTIE, J., sitting.

*Harold Leshem,* and *Sidney Balick,* for plaintiff.

*F. Alton Tybout,* for defendant.

No. 55 Civil Action 1964.

CHRISTIE, Judge.

Daniel W. Moran was 15 years old at the time of the accident which gives rise to this law·suit. He was a 10th grade student doing well in school. On June 17, 1962, Daniel and two friends were driven by Daniel's uncle to a place near White Clay Creek. The boys then crossed the Pennsylvania Railroad tracks and went onto the land of Delaware Racing Association to swim near an old dam on the White Clay Creek at a location known locally as "Little Falls." Below the dam at "Little Falls" was a small rocky pond about 6 or 6 and 1/2 feet deep and several feet wide in a wooded area some distance from the nearest road.

Daniel had been there to swim three or four times and was familiar with the depth of the water and with the environs of the pond. Each time he went there he had seen others swimming and picnicking at

the same location. He noticed that others would dive into the pond either from the top of the dam or from a level stone area or platform formed by an old stone wall at the end of the dam. Daniel knew how to swim and had been swimming and diving for a number of years.

After swimming in the pond and conversing with his friends, Daniel climbed on the stone platform with the intention of diving from the platform into the pool. The stone platform appears to be about ten feet above the surface of the pond. The platform is reached by a path in the woods which leads up to the back of the level area. When Daniel was two or two and a half feet from the edge of the level area or stone platform and before he started his dive, he slipped and fell off of the level area as if from a small cliff. He suffered serious injuries which have left him paralyzed from the waist down. Daniel stated afterward that if he had actually made his dive he believes such dive would have been made in safety.

Daniel did not seek nor obtain permission from the owners of the area to swim there. He did not see any "No Trespassing" signs although he did observe a "No Dumping" sign. He did not know who owned the area in question.

Defendant had bought the area in 1957 and had left it without new improvements. It had not in any way altered the Little Falls area. Defendant says that according to tradition in the area, the dam was built to form a mill race in about 1850 and has long been in disuse.

Defendant had posted "No Trespassing" signs in that general area and had replaced such signs from time to time when they disappeared or were torn down. There is no evidence that any such signs were in evidence on the day of the accident. Inspection of the area would have revealed that people were swimming and picnicking there and that there were no signs forbidding trespassing.

The injured boy and his father seek to collect damages from Delaware Racing Association on the theory that the Association, as land owner, was negligent in one or more of the following particulars:

1.  Failure to take reasonable precautions to prevent entry to the area where the injury occurred.

2.  Failure to post signs or warnings.

3.  Failure to erect barriers or fences.

4.  Failure to maintain a guard or watchman at the location.

5.  Failure to warn of hidden dangers.

There is no evidence of a hidden danger or that the accident was caused by a hidden danger so the fifth specification of negligence may be disregarded. It is apparent, however, that defendant did not take effective means to prevent trespassing or to warn trespassers. The question to be determined on defendant's motion for summary judgment is whether the evidence before the Court when viewed most favorably to the plaintiff could form a legal basis of liability on defendant's part. This in turn depends on what duty, if any, defendant had in respect to high school aged youths whom it knew or should have known were trespassing or acting as if they were a gratuitous licensee on its land in the vicinity of Little Falls.

Defendant has moved for summary judgment on the record contending that the record reveals no negligence on its part which proximately caused the injuries.

In general, land owners owe no duty to trespassers. If liability exists in this case, it would be predicated upon special rules such as those stated in one of the following sections of the Restatement of Torts (2nd edition).

"Sec. 335.   Artificial Conditions Highly Dangerous to Constant Trespassers on Limited Area.

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a

limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or seriously bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved."

"Sec. 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) The place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) The condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the

risk to children involved, and

 (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

 Section 335 deals with the liability of landowners to constant trespassers in respect to highly dangerous artificial conditions. Its scope is not limited to children. For purposes of this decision, I will assume that the stone wall and high level area or stone platform constituted a dangerous artificial condition maintained by defendant.

 I am of the opinion, however, that the stone wall and platform as described in Daniel's depositions and pictured in the photographs before the Court was not of such a nature that the owner may be held to have had reason to believe that trespassers would not discover whatever danger was inherent therein. It appears to be a very ordinary stone structure presenting no greater danger than do other walls, boulders and cliffs found in wooded areas, near waterways and on old farms in New Castle County. The Court takes judicial notice that there are many natural and artificial collections of stone in Brandywine Park and elsewhere in this County as high and as hazardous as the place from which Daniel fell. All old stone or concrete walls and steps involving a stone surface ten feet above another stone surface can be considered dangerous in that serious injury may result if one slips and falls; but even in this day and age, liability does not flow from the mere ownership of high ledges.

 The platform from which Daniel fell was near a small shallow pond used by trespassers for swimming. In other respects there is nothing to distinguish this small stone platform from other raised surfaces, the dangers of which are as apparent to a teenaged trespasser as they are to an adult owner.

 Does the existence of the swimming hole transpose an otherwise commonplace stone platform into a special hazard the owner should recognize as a dangerous condition which trespassers would fail to appreciate? Under the circumstances of this case the answer must be in

the negative.

Daniel was injured before he started to dive. He climbed on the rock to dive but he could have climbed there for any of a number of other reasons. The pool may not have been suitable for diving but it was not the pool nor a dive which injured him. He was not injured by diving into water which looked deep to him but which was in fact shallow nor by diving from a poorly situated location. He was injured by slipping and falling off of a high rocky area. The dangers of a fall in such a location were as apparent to him as they would be to the owner of the land. Plaintiff cannot recover under the provisions of Section 335 or any of the variously stated rules of law as to adult trespassers whose presence is known or should be known to the owner.

Section 339 deals with liability of landowners for injury to trespassing children on account of highly dangerous artificial condition. The rules stated in Section 339 have been applied in Delaware and appear to be replacing the stricter requirements of the "attractive nuisance" doctrine in many jurisdictions. *Beaston v. James Julian, Inc.,* 10 Terry 521, 120 A.2d 317 (Superior Ct., 1956); Prosser on Torts, 3rd Ed., p. 375. In the great majority of cases in which this Section or rules similar to those contained in this Section have been applied, the injured child has been not more than twelve years of age but older children have also recovered thereunder in some cases.

Again, for purposes of this decision, I will assume (without so holding) that the place where Daniel fell was an artificial and dangerous condition. But there is nothing in the record from which it could be ruled that the owner knew or should have known that the condition created "an unreasonable risk of death or serious bodily harm" to the boy who was injured. Prosser on Torts, 3rd Ed. pp. 379–380; Prosser, "Trespassing Children" 47 Cal. L. Rev. 427, 455–61 (1959); *McHugh v. Reading Co.,* 346 Pa. 266, 30 A.2d 122, 145 A.L.R. 319 (1943); *Hocking v. Duluth, Missabe and Iron Range Railway Co.,* 263 Minn. 483, 117 N.W.2d 304 (1962); *Coon v. Kentucky and Indiana T. R. Co..,* 163 Ky. 223, 173 S.W. 325, L.R.A. 1915D, 160 (1915); *Davis v. Goodrich,* 171 CAl. App. 2d 92, 340 P.2d 48 (1959).

Again, it must be remembered that Daniel fell when he slipped on a stone platform and that his injuries do not result from any special situation which would have been more apparent to the owner than it was to a 15-year-old youth.

There is no evidence from which it could be inferred that defendant had reason to believe that trespassers would not discover the danger inherent in climbing onto high places made of stone or from which it could be inferred that children of Daniel's age and experience would be involved in unreasonable risk by climbing or walking where the accident occurred. Plaintiff cannot recover on this record under any theory of recovery which has been suggested to the Court.

Since there has been no showing that defendant violated any duty it owed to plaintiff in connection with the condition alleged to have caused the injury, I have not reached the question of the alleged contributory negligence on Daniel's part. Daniel does not seem to know what actually caused him to fall. In thinking back on it, however, he is of the opinion that part of the rock surface may have been wet and that this wetness might have made a portion of the rock slippery. He remembers that young children had been splashing around in that area sometime before he climbed up there. I express no opinion at this point in the proceedings as to whether or not defendant has established as a matter of law that Daniel was contributorily negligent.

Judgment will be entered for defendant. It is so ordered.